IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mark D. Majkowski, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 CV 4842 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| American International Group, Inc., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark Majkowski brings an action against Defendant American International Group, Inc. ("AIG") alleging that AIG failed to meet the terms of an insurance policy under which Plaintiff was covered. Plaintiff complaint advances claims under the Illinois Declaratory Judgment Act, 735 ILCS 5/2-701, the Illinois insurance code, and Illinois contract law. Defendant now moves to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 19(b). For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

### I. BACKGROUND

The predicate facts in this case are relatively simple. Plaintiff was an officer of International Radiology Group ("IRG"), a business incorporated in Delaware. IRG's principal place of business was in Dallas, Texas, until December 31, 2003, when its principal place of business became Northbrook, Illinois. Plaintiff resided in Chicago at all relevant times. IRG was the named entity insured under several insurance policies issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Illinois National Insurance Company ("Illinois National"). Under each of these policies, the insurers were obliged to

advance defense costs to the insured prior to the final disposition of any claims brought against it. On April 11, 2005, Plaintiff was sued in Dallas (the "Texas Action") for actions taken by him as an officer of IRG. Plaintiff alleges that he has incurred defense costs in excess of $400,000 as a result of the Texas Action. Plaintiff seeks a declaratory judgment that he is entitled to advance defense payments under the insurance policies.

However, Plaintiff has chosen not to sue National Union or Illinois National, the insurance companies that issued the policies regarding which he seeks declaratory judgment, instead bringing this action against AIG. Plaintiff alleges that National Union and Illinois National are "constituent entities under the control of AIG." Compl. ¶ 3. Because Plaintiff's claims sound only in Illinois law, this Court's subject matter jurisdiction is premised on the diversity of the parties pursuant to 28 U.S.C. § 1332. Defendant contends that Plaintiff's failure to join the actual insurers, who are allegedly indispensible parties, warrants dismissal under Fed. R. Civ. P. 19(b).

Defendant also argues that even if the failure to join the actual insurers does not warrant dismissal of the case, there is no actual case or controversy over which this Court could make a declaratory judgment, so dismissal is appropriate for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). On April 8, 2008, Judge Abner Mikva presided over a meditation of the coverage disputes between Plaintiff and the insurance companies. National Union, Illinois National, and AIG (collectively, "the insurers") were all represented by E. Joseph O'Neil. At the conclusion of the mediation, all of the parties present, including Plaintiff, signed a Settlement Term Sheet. In the settlement, the parties agreed to draft and execute a more detailed agreement, but also agreed that the Settlement Term Sheet was "a binding and enforceable agreement between the parties." Settlement Term Sheet 1, April 8, 2008. Plaintiff also "agree[d] to release

the insurers and their subsidiaries and employees and counsel from any claim or rights he may have under any directors and officers liability policy (or any comparable policy) issued by the Insurers or one of their subsidiaries to IRG . . . ." *Id*. at 2. After the April 8 settlement was reached, Plaintiff apparently had a change of mind and refused to sign the detailed settlement agreement that O'Neil emailed to Plaintiff on May 2, 2008. Plaintiff now argues that the April 8 agreement is invalid and unenforceable for several reasons, including lack of consideration and duress. Defendant argues that the settlement is binding and that Plaintiff's claims are moot, and moves for dismissal under Fed. R. Civ. P. 12(b)(1).

## II. DISCUSSION

Defendant contends that Plaintiff and all of the insurers involved in this lawsuit are bound to the settlement agreement signed on April 8, 2008, and that the agreement makes this lawsuit moot. It is fundamental to the exercise of judicial power under Article III of the United States Constitution that "federal courts may not give opinions upon moot questions or abstract propositions." *Protestant Mem'l Med. Ctr., Inc. v. Maram,* 471 F.3d 724, 729 (7th Cir.2006). Mootness is a threshold jurisdictional question that insures that the court is faithful to the case or controversy limitation in Article III of the Constitution. *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008). A case becomes moot when a party's legally cognizable interest in the litigation ceases to exist, and the case must be dismissed for lack of jurisdiction. *Id.*; *see also Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). When reviewing a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir.1999). In considering such

a motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.*; *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

As discussed above, Plaintiff and representatives from National Union, Illinois National, and AIG met for a mediation of coverage disputes between Plaintiff and the insurers on April 8, 2008. Judge Abner Mikva acted as mediator. The handwritten settlement that emerged from that mediation was signed and dated by Plaintiff, Alex Fooksman on behalf of the insurers, Joseph O'Neil as counsel for the insurers, and Judge Mikva as mediator. The terms of the settlement were finite and clear. The parties "agree[d] that [the] Settlement Term Sheet is a binding and enforceable agreement between the parties." Settlement Term Sheet 1. The insurers agreed to pay Plaintiff a total of $125,000 and that the payment would be treated by the insurers as a loss payment made under one of Illinois National's policies. *Id.* at 3. Plaintiff also "agree[d] to release the insurers and their subsidiaries and employees and counsel from *any* claim or rights he may have under *any* directors and officers liability policy (or any comparable policy) issued by the Insurers or one of their subsidiaries to IRG . . . ." *Id*. at 2 (emphasis added).

Plaintiff argues in his reply memorandum that the settlement he signed is not a valid enforceable agreement, for a grab-bag of poorly articulated reasons, among them that (1) "[Plaintiff] was under duress at all times during the claims and mediation process," (2) the settlement agreement fails for lack of consideration, (3) Plaintiff unilaterally repudiated the settlement agreement by email the morning after it was signed, (4) the settlement fails to settle claims under *all* the insurance policies, (5) Plaintiff did not have capacity to enter the contract, (6) Plaintiff did not have assistance of counsel, (7) Defendant's counsel told Plaintiff that he was

not authorized by Defendant to settle the claim, and other reasons difficult to parse from Plaintiff's 28-page reply memorandum. *See generally* Pl.'s Answer to Def.'s Mot. to Dismiss; Northern District of Illinois Local Rule 7.1.

Voluntary resolution of litigation, through settlement, is favored by the courts. *Victory Beauty Supply Co. v. Lus-ter-oil Beauty Products Co.,* 562 F.Supp. 786, 789 (N.D.Ill.1983). Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law. *Magallanes v. Illinois Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008). Plaintiff's arguments are, for the most part, specious. Duress is a claim against the other party to the contract, and it requires more than vexation, the stress of a difficult bargaining position, or financial pressure; duress requires "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness[es] of another." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 569 (7th Cir.1995). Furthermore, a party asserting duress cannot prevail if he had an alternative to entering into the agreement. *Id.* Plaintiff alleges no facts that could lead this Court to conclude that the settlement agreement should be unenforceable due to duress. The consideration for the settlement agreement is written into its terms ($125,000 from the insurers in exchange for a discharge of Plaintiff's claims). A settlement agreement is a contract which cannot be unilaterally repudiated by any of the parties. *Herron v. City of Chicago*, 618 F.Supp. 1405, 1409 (N.D. Ill. 1985) (where written agreement was contemplated by parties but not executed due to plaintiffs' recalcitrance, oral settlement agreement is binding and terms cannot be changed unilaterally). Thus, Plaintiff's morning-after email to the insurers backing out of the settlement agreement does not render the contract unenforceable. The settlement agreement, on its own terms, settles claims under *any* of the insurers' insurance policies. Plaintiff has failed to

allege any facts suggesting he did not have sufficient capacity to enter into a contract with the insurers.

Plaintiff's other arguments regarding the validity and enforceability of the settlement agreement fail as well. Under Illinois law, a valid and enforceable settlement agreement requires offer, acceptance, and a meeting of the minds on all material terms. *Higbee v. Sentry Ins. Co.,* 253 F.3d 994, 997 (7th Cir. 2001). Such is the case with the April 8 settlement agreement. Plaintiff's primary argument against the validity and enforceability of the settlement agreement is that he changed his mind the next morning, when he sent an email to the insurers repudiating the agreement. But the unambiguous language of the settlement, the fact that it was mediated by Judge Mikva, and Plaintiff's failure to allege any facts that could lead this Court to conclude there was no meeting of the minds all suggest that the settlement agreement was intended by all of the parties, and understood to be a final and complete resolution of the entire case. Plaintiff, who represents himself in this proceeding *pro se*, need not have been represented by counsel in order to enter into a binding settlement agreement with the insurers.

The settlement agreement is a valid and enforceable document that binds the parties and moots Plaintiff's claims against Defendant. This Court therefore does not have subject matter jurisdiction over the matter, and this case is **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(1).

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **December 16, 2008**